**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DARLENE G. EVANS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0409-WS-C** |
| | ) | |
| **INFIRMARY HEALTH SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 28). Additionally, embedded in plaintiff's Brief in Opposition (doc. 35) is a request that this action be remanded to state court for want of subject matter jurisdiction. The Court therefore construes plaintiff's brief as a motion to remand. Both motions have been briefed and are ripe for disposition.[1]

**I.      Background.**

    *A.      Nature of the Case.*

Plaintiff, Darlene G. Evans, brought this lawsuit in the Circuit Court of Mobile County, Alabama, against her former employer, Infirmary Health Services, Inc.,[2] to recover certain

---

[1]      Paragraph 13(c) of the applicable Rule 16(b) Scheduling Order (doc. 13) specifies that when a party's exhibits in support of or in opposition to a motion exceed 50 pages, that party must furnish courtesy hard copies of those exhibits to chambers. Despite designating more than 150 pages of exhibits (docs. 30, 31) in support of its Rule 56 Motion, defendant did not comply with the courtesy-copy requirement. In its discretion, and to avoid any delay in adjudication of the issues presented, the Court will consider the pending motions at this time, notwithstanding this omission.

[2]      In its summary judgment filings, defendant indicates that the correct name for that entity is Mobile Infirmary Medical Center. To date, however, plaintiff has not amended her pleadings to identify defendant by any name other than Infirmary Health Services, Inc. Because plaintiff is the master of her Complaint, this Order will not purport to rewrite the pleadings or rename the defendant for her; instead, this Order will refer to defendant as Infirmary Health, just as plaintiff has done in her pleadings.

benefits that she claims Infirmary Health promised to pay her as a condition of her separation from defendant's employ. According to the Complaint, Evans entered into a severance agreement with defendant in December 2007, pursuant to which Infirmary Health agreed to continue her participation in certain benefits programs through May 26, 2008. During that severance period, the Complaint alleges, Evans began suffering from certain mental health conditions (including clinical depression, anxiety / panic attacks, and post-traumatic stress disorder), which necessitated that she receive long-term medical treatment. Evans contends that this treatment is covered by the terms of her severance agreement with Infirmary Health; however, Infirmary Health denied coverage. On that basis, Evans asserts facially state-law causes of action against Infirmary Health for declaratory judgment and breach of contract, maintaining that the severance agreement obligates Infirmary Health to provide medical coverage and expenses to Evans for these conditions, but that Infirmary Health has refused to do so.[3]

## B.    Relevant Facts.[4]

Evans was employed by defendant as Assistant Vice President of Nursing at Mobile Infirmary Medical Center ("MIMC") from September 5, 2006 through November 26, 2007. (Stembridge Aff., ¶¶ 2, 4.) The reasons for Evans' separation from MIMC are not germane to this action, and do not appear in the record. It is undisputed that Evans did not work for defendant in any capacity, or perform any duties of any kind at or for MIMC, after November 26, 2007. (Evans Dep., at 35-36.)[5] Evans testified that her last day of work at MIMC was on

---

[3]    In her deposition, Evans clarified that the relief sought in this action centers on the short-term and long-term disability benefits she claims she is owed, as well as reimbursement of the health care costs she has had to pay in the absence of such disability benefits. (Evans Dep., at 19-20.)

[4]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence (to the extent that she offered any in the summary judgment record) is taken as true and all justifiable inferences are drawn in her favor.

[5]    Defendant has submitted Evans' entire 97-page deposition transcript as an exhibit to its Rule 56 Motion. (Doc. 31, at Exh. 1.) It has also filed unexpurgated copies of short-term

approximately November 17 or 18.  (*Id.*)

          *1.*     *The Severance Agreement and Policy.*

On November 26, 2007, Infirmary Health officials met with Evans, informed her that her employment was being terminated, and proffered a written severance agreement under which Infirmary Health would provide her with four months of severance pay, including health and dental benefits, in exchange for Evans executing a general release.  (Stembridge Aff., ¶ 4.) Evans negotiated with Infirmary Health regarding the terms of severance, and ultimately defendant agreed to extend the severance period (for both severance pay and health and dental benefits) to six months, rather than the four months initially offered.  (*Id.*, ¶ 6; Evans Dep., at 22-23, 26.)  Infirmary Health modified the written agreement to reflect these expanded benefits, and provided a new version of the document to Evans for her review on December 4, 2007. (Stembridge Aff., ¶ 8.)  At that time, Evans promptly read and signed the severance agreement (the "Agreement").  (*Id.*; Evans Dep., at 21, 27.)  Defendant executed the Agreement on December 5, 2007.  (Plaintiff's Brief (doc. 35), at Exh. 1.)

In the Agreement, the parties confirmed that "Evans's employment with MIMC will cease effective November 26, 2007."  (*Id.*, § I.)  Notwithstanding the termination of her employment, MIMC promised to "pay Evans an amount of severance equal to her current base

---

and long-term disability policy documents, and even what appears to be multiple copies of the same policy.  (Doc. 30, at Exhs. D & E.)  Large swaths of these voluminous exhibits are not referenced in defendant's briefs.  The filing of unexcerpted exhibits contravenes the Local Rules' directive that "[i]f discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response."  LR 5.5(c).  Defendant's evidentiary submission will be accepted as filed; however, this Court will neither scour the uncited portions nor engage in line-by-line comparisons of what appear to be identical exhibits, seeking out any evidence that may advance movant's position.  *See, e.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"); *Preis v. Lexington Ins. Co.*, 508 F. Supp.2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions."); *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial.").

salary in bi-weekly installments ... through May 26, 2008.  During this period, Evans may continue her participation in the [Infirmary Health System, Inc.] group health and dental programs with the employee share of any contributions for such benefits being made by payroll deduction."  (*Id.*)  The Agreement further provided that "Evans expressly waives any rights to any other severance benefits not set forth in this Agreement."  (*Id.*, § II.2.)  In addition to this waiver of other benefits, Evans released Infirmary Health, MIMC, and various affiliated individuals and entities from all claims and causes of action, including without limitation claims under "the Employee Retirement Income Security Act ... and any contract and tort claims under state law."  (*Id.*, § II.1.)  Finally, Evans acknowledged that "[s]he accepts the payment described above as final and complete settlement of all claims and causes of action that she has against Infirmary Health System, Inc. or any of its affiliates."  (*Id.*, § IV.5.)  The Agreement made no reference to any severance policy or guidelines of Infirmary Health, and did not purport to be adopting, incorporating or implementing any such policy.  Nor did the Agreement specifically mention long-term or short-term disability benefits.[6]

Defendant's uncontroverted evidence is that "[t]he severance arrangements made with Ms. Evans were made pursuant to Infirmary Health System's Leadership Severance Guidelines which have been followed for a number of years."  (Stembridge Aff., ¶ 9.)[7]  The applicable Infirmary Health policy (the "Policy") on Leadership Severance in effect in 2007 provided, *inter alia*, that "upon the involuntary termination of an eligible leader or executive and upon execution of a binding release agreement," Infirmary Health would provide severance pay using a formula

---

[6]      In that regard, Evans testified that her "understanding" of the Agreement "was that any and all health related and dental, and what have you, would be covered, and anything other than that."  (Evans Dep., at 29-30.)  Evans' theory, then, is that disability benefits were included in the severance benefits provided by her Agreement because they are "related to health," "based on a health status change for [her]," and "[i]t was a medical and health related issue."  (*Id.* at 30-31.)  Evans acknowledged that defendant never told her that the Agreement extended to disability benefits, but that she interpreted it in that manner.  (*Id.*)

[7]      However, Evans testified that she had never heard of Infirmary Health's severance program for executives at the time of her dismissal.  (Evans Dep., at 37.)

dependent on the employee's job level and length of service. (*Id.*, Exh. A, § II.D.)[8] The Policy also provides for a "30-day notification period" for eligible employees, distinct from the "conditional severance" period. (*Id.*, ¶ II.A.) Defendant offers no evidence that plaintiff received a 30-day notification period. More generally, the record is devoid of evidence explaining how Evans' severance period was computed under the Policy's formula. Presumably, however, that formula would yield a period of four months in plaintiff's case, since that is what defendant offered her. That Evans successfully negotiated her severance period upward from four months to six months reflects that Infirmary Health agreed to pay her severance benefits in excess of those authorized by the Policy. With respect to insurance coverages, two Policy provisions are potentially significant. First, the Policy states that basic group life insurance, dental insurance, and medical insurance benefits continue during the severance period, but that "[o]rdinarily, all other benefits afforded under the STHS Benefits Program cease on the last day of actual work." (*Id.*, § II.E.) Second, the Policy reflects that "Sick/Disability benefit and ETO benefits do not accrue beyond the last day of active work." (*Id.*, § II.F.)

> 2.    *Evans' Medical Condition(s) and Request for Benefits.*

Evans acknowledges that defendant paid her all severance pay promised from November 26, 2007 through May 26, 2008, in accordance with the Agreement. (Evans Dep., at 27.)[9] She further concedes that defendant continued her coverage for health and dental benefits during that six-month severance period, and that it deducted the employee share of those premiums from her semi-weekly severance checks in the ordinary course of business. (*Id.* at 27-28, 80-81.)

In February 2008, Evans was hospitalized and diagnosed with various mental health conditions, including post-traumatic stress disorder, anxiety disorder, detachment, and panic

---

[8]    The copy of the Policy in the summary judgment record includes signature blocks for approval by the Vice President, President and CEO, and Board Chair; however, all are unsigned and undated. (*Id.*, Exh. A.) Nonetheless, defendant's unchallenged evidence is that this iteration of the Policy was in fact in effect in 2007. (Stembridge Aff., ¶ 9.) Therefore, the Court finds for summary judgment purposes that this exhibit reflects the Policy in effect at Infirmary Health at the time of Evans' separation.

[9]    The reference to "May 26, 2007" in plaintiff's deposition transcript is plainly either a typographical error or the product of a misstatement, inasmuch as Evans' severance period did not even begin until November 2007, with a terminus date of May 26, 2008.

disorder. (Evans Dep., at 54-55.)[10]  From approximately April 2008 through June 2008, Evans was unable to work because she was receiving outpatient or day treatment at a facility in Daphne, Alabama. (*Id.* at 57-62.) As of her deposition in February 2009, Evans was working part-time (approximately one week per month), but had not been released by her treating physicians to work full time. (*Id.* at 71-74.) Upon becoming unable to work because of her mental health issues, Evans contacted Infirmary Health to inquire about short-term and long-term disability benefits. (*Id.* at 78.) She was informed that she was ineligible for benefits under the Infirmary Health disability plans because those coverages were not part of her severance agreement. (*Id.* at 25-26, 79.) In particular, on May 1, 2008, Infirmary Health sent Evans a letter stating that, while the Agreement provided for her health and dental coverage to continue through May 26, 2008, "[o]ther benefits, such as short and long term disability[,] ceased with your separation date of November 26, 2007, since you were no longer in an eligible group." (Plaintiff's Brief (doc. 35), at Exh. 3.)

   **C.     Procedural Posture.**

   As mentioned *supra*, Evans' Complaint filed in state court interposed claims against Infirmary Health for declaratory judgment and breach of contract, based on defendant's failure to provide disability benefits to her during the severance period. On July 14, 2008, Infirmary Health removed this action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. Notwithstanding the nominally state-law causes of action joined in the Complaint, defendant contended that federal jurisdiction was conferred by 28 U.S.C. § 1331 because plaintiffs' claims were subject to superpreemption under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). As defendant reasoned in its Notice of Removal:

> "The Severance Agreement, providing for *periodic* payments and a *continuation* of health and dental programs pursuant thereto, is considered to be an employee welfare benefit plan created under and governed by ERISA. ... Said suit then is necessarily federal in character; and, therefore, this Court has original jurisdiction of the Plaintiff's Complaint, under the provisions of ... § 1331."

(Notice of Removal (doc. 1), at 2.) Plaintiff did not immediately contest the propriety of

---

   [10]     She testified that her personal physician had diagnosed her with anxiety and clinical depression in 2007, prior to the termination of her active employment at MIMC, but that she had been able to continue working despite those conditions. (*Id.* at 55-56.)

-6-

removal; rather, Evans participated in discovery and other pretrial processes for nine months without ever questioning federal jurisdiction.

On March 31, 2009, Infirmary Health filed a Motion for Summary Judgment asserting that it was entitled to judgment as a matter of law because (1) Evans' claims were subject not only to superpreemption, but also to defensive preemption under ERISA, mandating their dismissal; and (2) even if plaintiff's claims were recharacterized as ERISA causes of action, plaintiff was not entitled to the requested disability benefits under the terms of the Agreement. In her response (doc. 35) to Infirmary Health's Motion, plaintiff contended that her claims for benefits do not arise under an employee welfare benefit plan, such that ERISA does not apply, federal jurisdiction is wanting, and this action must be remanded to state court. Plaintiff did not address Mobile Infirmary's argument that she is not entitled to the requested benefits under the terms of the severance agreement and release. Infirmary Health filed a Reply (doc. 36) explaining its position that federal jurisdiction is present and that Evans' claims lie within the ambit of ERISA superpreemption.

## II.   Subject Matter Jurisdiction / Motion to Remand.

It is perhaps surprising that Evans waited until after the close of discovery and briefing on summary judgment was underway before challenging subject matter jurisdiction; however, this delay neither obviates nor blunts plaintiff's argument. The law is clear that this kind of jurisdictional challenge may properly be raised at any time. *See, e.g., Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851 (11th Cir. 1999) ("an argument that the court lacks jurisdiction may be raised at any time during the course of the proceedings"). Prefatory to any consideration of defendant's Rule 56 motion, then, the Court will examine in detail plaintiff's jurisdictional objection, to which defendant had a full and fair opportunity to respond in its reply brief (doc. 36).[11]

_____

[11]   Given the straightforward nature of plaintiff's claims, the absence of any apparent disputes of material fact as to the merits, and the parties' superficial treatment of the jurisdictional question, it may appear to be an unwise detour and an inefficient use of resources for the Court to embark on a full-blown ERISA preemption analysis at this time in lieu of cutting

A.      *Complete Preemption and ERISA.*

The Eleventh Circuit has explained that "[i]n determining whether federal jurisdiction exists, we apply the well-pleaded complaint rule, which requires that we look to the face of the complaint rather than to defenses, for the existence of a federal question." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178 (11ᵗʰ Cir. 2006); *see also Blab T.V.*, 182 F.3d at 854 ("When evaluating whether this case arises under federal law, we are guided by the 'well-pleaded complaint' rule, which provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination."). Evans' Complaint asserts facially state-law causes of action involving non-diverse parties. Nonetheless, federal jurisdiction over this matter may still be proper if Evans' claims are completely preempted by ERISA. "[C]omplete preemption occurs when the preemptive force of the federal statute is so powerful as to displace entirely any state cause of action." *Stuart Weitzman, LLC v. Microcomputer Resources, Inc.*, 542 F.3d 859, 865 (11ᵗʰ Cir. 2008) (citation and internal quotation marks omitted); *see also Dial v. Healthspring of Alabama, Inc.*, 541 F.3d 1044, 1047 (11ᵗʰ Cir. 2008) ("Complete preemption occurs when a federal statute both preempts state substantive law and provides the exclusive cause of action for the claim asserted.") (citation and internal quotation marks omitted). "Because of the nature of complete preemption, ... if such a state law claim is completely preempted, the state law claim would be entirely displaced, and substituted therefor would be the equivalent federal claim ...." *Stuart Weitzman*, 542 F.3d at 865. "Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to 'federal question' jurisdiction and thus may provide a basis for removal." *Blab T.V.*, 182 F.3d at 854 (citation omitted).[12]

---

straight to the merits. However, it is well settled that in the absence of subject matter jurisdiction, federal courts are not empowered to reach the merits of a dispute at all. *See, e.g., Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11ᵗʰ Cir. 2001) ("because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case" before moving forward). For that reason, it is imperative that the jurisdictional issue be examined thoroughly in the first instance before proceeding any further as to the merits.

[12]     Complete preemption (sometimes called superpreemption) is analytically distinct from ordinary preemption (also known as defensive preemption). As the Eleventh Circuit contrasts the two doctrines, "ordinary preemption may be invoked in both state and federal court

Infirmary Health removed this action on the premise that Evans' breach of contract and declaratory judgment causes of action are completely preempted by ERISA.  It is well-settled that complete preemption applies where a plaintiff asserts state-law claims that seek relief available under ERISA.  *See, e.g., Jones*, 457 F.3d at 1178 ("As ERISA claims are completely preempted, ... state law claims that seek relief available under ERISA are recharacterized as ERISA claims and arise under federal law."); *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 835 n.1 (11th Cir. 2006) ("The doctrine of complete preemption permits federal question removal of ERISA claims pleaded as state law claims."); *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1353 (11th Cir. 1998) ("claims that fall within the scope of [29 U.S.C.] § 1132(a) are treated as arising under federal law and thus may be removed to federal court").  That said, if a defendant removes on a complete preemption theory and the claims are not completely preempted, the case must be remanded.  Indeed, "[t]he issue of complete preemption is jurisdictional; meaning, if the claims are not completely preempted, they are not properly removed and must be remanded to state court."  *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003).  This is precisely the course of action Evans now urges this Court to take.

In order for a plaintiff's state-law claim to be completely preempted by ERISA, all of the following four elements must be satisfied: "(1) There must be a relevant ERISA plan; (2) the plaintiff must have standing to sue under that plan; (3) the defendant must be an ERISA entity; and (4) the complaint must seek compensatory relief akin to that available under § 1132(a), which is normally a claim for benefits under the plan."  *Jones*, 457 F.3d at 1178; *see also Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999) (similar).  This four-pronged test for complete preemption is commonly referred to in the case law as "the *Butero* test," a convention to which this Order will adhere.

---

as an affirmative defense to the allegations in a plaintiff's complaint.  Such a defense asserts that the state claims have been substantively displaced by federal law.  Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption.  Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims.  It looks beyond the complaint to determine if the suit is, in reality, purely a creature of federal law."  *Stern v. International Business Machines Corp.*, 326 F.3d 1367, 1371 (11th Cir. 2003) (citation omitted).

**B.** **The Severance Policy is an ERISA Plan.**

Evans challenges the application of ERISA complete preemption here, on the grounds that the first element of the *Butero* test is not satisfied (*i.e.*, there is no ERISA plan).  An employee welfare benefit plan governed by ERISA is established only if all of the following criteria are satisfied: "(1) a plan, fund or program (2) that has been established or maintained (3) by an employer (4) for the purpose of providing [severance] benefits (5) to participants or their beneficiaries."  *Moorman v. Unumprovident Corp.*, 464 F.3d 1260, 1269 (11th Cir. 2006) (citation omitted); *see also Butero*, 174 F.3d at 1214 (similar).  Evans' objection takes aim solely at the "plan, fund or program" requirement.  Therefore, the narrow issue of whether the relevant Infirmary Health benefits plan qualifies as an ERISA "plan, fund or program" becomes the focal point of the analysis.

Unfortunately, defendant injects substantial confusion into the analysis by vacillating as to the identity of the ERISA plan.  Such ambiguity creates uncertainty as to whether the "plan, fund or program" inquiry should examine the Agreement signed by Evans or, alternatively, the leadership severance Policy propounded by Infirmary Health.  In its Answer, Infirmary Health asserted that the Policy was the ERISA plan, stating that "[t]he Severance Agreement in question was entered into pursuant to a Severance Plan governed by ERISA."  (Doc. 11, at 1.)  Yet in its Notice of Removal, Infirmary Health took a different tack, declaring that "[t]he Severance Agreement ... is considered to be an employee welfare benefit plan created under and governed by ERISA," without referencing the Policy.  Defendant changed course once again in its principal brief on the Motion for Summary Judgment, wherein it argued, "Because the severance agreement at issue is an 'employee welfare benefit plan' under ERISA, the claims in her Complaint are preempted by ERISA."  (Doc. 29, at 8.)  Then in its Reply to plaintiff's newly-raised jurisdictional argument, Infirmary Health reverted back to the theory that the Policy is the ERISA plan, insisting that it had consistently maintained that position throughout this litigation and omitting any rebuttal of Evans' arguments that the Agreement is not an ERISA plan.  (Doc. 36, at 3-10.)[13]  So the threshold question is whether the analysis of the first *Butero* element (*i.e.*,

---

[13]     In the Reply, defendant unfairly criticized plaintiff for "restricting her analysis to the Severance Agreement and Release" and inaccurately suggested that its position has remained

whether an ERISA plan exists) should examine the Agreement or the Policy.  Based on its unequivocal response (doc. 36) to Evans' jurisdictional objection, defendant has firmly committed to a position that the Policy is the relevant ERISA plan; therefore, the Court will scrutinize that theory, without weighing separately defendant's now-abandoned contention that the Agreement itself constitutes an ERISA plan.[14]

_____

fixed "throughout this litigation."  (Doc. 36, at 8.)  Given that defendant's ERISA preemption theory (in terms of the identity of the ERISA plan) has shifted like the winds, plaintiff's confusion is understandable, and is certainly not deserving of reproach.

[14]   In framing the relevant inquiry as being whether the Policy (not the Agreement) is an ERISA plan, two additional points are appropriate.  First, this Court's general practice is not to consider new arguments raised in a reply brief.  *See, e.g., Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455, *8 (S.D. Ala. Apr. 1, 2008) ("In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief."); *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 317 n.89 (S.D. Ala. 2006) ("this argument is not properly raised because plaintiffs submitted it for the first time in their reply brief").  Here, however, Evans presented her jurisdictional objection not as a freestanding motion to remand, but in an opposition brief to defendant's Rule 56 motion, such that defendant's reply brief was effectively an opposition to a newly-filed motion to remand.  Under these circumstances, it was not improper for Infirmary Health to set forth a new argument against remand in what was nominally a reply brief.  Had plaintiff wished to be heard in response to that argument, she could have sought leave to file a sur-reply.  She did not do so.
  Second, although defendant has finally positioned the issue in such a way that it has abandoned its previous contention that the Agreement itself constitutes an ERISA plan, other courts have made fact-specific determinations that agreements between an employer and a particular employee may or may not qualify as ERISA plans, depending on the circumstances. *See, e.g., Williams v. Wright*, 927 F.2d 1540, 1543-45 (11th Cir. 1991) (company president's letter to employee promising $500 monthly retirement checks until employee's death held to constitute an ERISA plan, because payment of benefits out of employer's general assets does not affect threshold question of ERISA coverage, payment terms outlined in letter provided sufficiently ascertainable procedures for receiving benefits to warrant ERISA plan status, and "a plan covering only a single employee, where all other requirements are met, is covered by ERISA"); *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996) (neither party disputed lower court's determination that severance agreement between executive and employer is a "plan" covered by ERISA); *Hernandez v. Alcatel USA Resources, Inc.*, 560 F. Supp.2d 528, 534 (E.D. Tex. 2006) ("an agreement to pay severance benefits may constitute an employee welfare benefit plan") (citation omitted); *Nadworny v. Shaw's Supermarkets, Inc.*, 405 F. Supp.2d 124, 139 (D.

-11-

Unquestionably, severance plans may fall within the ambit of ERISA in certain circumstances. *See, e.g., Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) ("plans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of the Act"); *Adams v. Thiokol Corp.*, 231 F.3d 837, 840 n.4 (11th Cir. 2000) ("a severance pay plan is an 'employee welfare benefit plan,' as defined under ERISA"); *Mange v. Petrolite Corp.*, 135 F.3d 570, 571 (8th Cir. 1998) (declaring that ERISA "governs severance benefits plans even if those plans are not separately funded"). Although it is a fact-specific inquiry, federal courts have frequently deemed severance benefit plans to qualify as employee welfare benefit plans for ERISA purposes.[15]

Having confirmed that, as a general proposition, a severance plan may be governed by ERISA, the Court now turns to the specific question of whether Infirmary Health's Policy is an

---

Mass. 2005) (deeming severance agreement with one-time, lump sum payment of benefits to be ERISA plan, but noting that the question "is an extremely close one"); *but see Evanoff v. Banner Mattress Co.*, 526 F. Supp.2d 810, 815 (N.D. Ohio 2007) (agreement under which a single employee was to receive salary and benefits for 18 months following termination "is not extensive and complex enough to require an on-going administrative scheme and thus, is not covered by ERISA"); *Rodgers v. Q3 Stamped Metal, Inc.*, 499 F. Supp.2d 984, 992 (S.D. Ohio 2007) (stating that "the Court is concerned as to whether" severance package at issue is simply a contract between employer and employee, rather than an ERISA plan); *Emery v. Bay Capital Corp.*, 354 F. Supp.2d 589, 596 (D. Md. 2005) (employment agreement promising six months of severance pay was not preempted under ERISA, recognizing "admonition that there must be some reasonable limits to the scope of ERISA preemption, and that careful scrutiny must be given to a plan involving a single beneficiary"). Inasmuch as Infirmary Health's opposition to the motion to remand emphatically identifies the Policy (and not the Agreement) as the ERISA plan, the Court expresses no opinion as to whether the Agreement executed by Evans and Infirmary Health might constitute an ERISA plan.

[15]     *See, e.g., Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 678-80 (8th Cir. 2004) (severance plan was an ERISA plan where intended benefits, class of beneficiaries, source of funding, and procedures for receiving benefits could be readily ascertained, and plan required ongoing administrative scheme); *Hernandez*, 560 F. Supp.2d at 535 (employer's severance plan was an ERISA plan, where employees were beneficiaries of the plan, company's general assets funded the plan, and plan detailed procedures for receiving benefits); *Cantrell v. Currey*, 407 F. Supp.2d 1280, 1286-88 (M.D. Ala. 2005) (company's severance plan deemed an ERISA plan where intended benefits, class of beneficiaries, source of financing, and procedures for receiving benefits were all readily ascertainable).

ERISA plan.  It is well settled in this Circuit that "[a] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991) (citation omitted); *see also Moorman*, 464 F.3d at 1265 (same); *Butero*, 174 F.3d at 1214 ("An ERISA plan exists whenever there are intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.") (citation omitted).  In performing this threshold inquiry, the Court bears in mind that "[i]t is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative" of whether an ERISA plan exists.  *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1331 (11th Cir. 1998); *see also Moorman*, 464 F.3d at 1265.  Notwithstanding these specific rules and criteria, the Eleventh Circuit has favored a "flexible analysis" in ascertaining the existence of a plan.  *Williams*, 927 F.2d at 1543.

Upon scrutiny of the record, the Court readily concludes that Infirmary Health's leadership severance policy qualifies as an ERISA plan.  The Policy's intended benefits are obvious, taking the form of severance pay and continued life, health and dental benefit coverage for a period of time defined by a formula specified in the Policy.  In that regard, the Policy provides that if an eligible employee is asked to leave, "the employee will be offered appropriate salary and life, health and dental benefit continuance for a specified period of time.  This benefit is designed to help the displaced individual transition to other gainful employment ...." (Stembridge Aff., Exh. A, at I.)[16]  Likewise, the class of intended beneficiaries is clearly delineated on the face of the Policy as being those employees "at the functional level of

---

[16]    The severance period duration is not discretionary under the Policy, but is instead set by a specific formula.  For each particular job level of eligible employee (manager, vice president, etc.), the Policy provides for a one-month notification period, plus an additional conditional severance period, the minimum and maximum of which vary depending on the job level.  According to the Policy, where a particular employee falls within the range bounded by the applicable minimum and maximum "is computed using the formula of 1 month for each full year of continuous, full-time service, up to the specified maximum for the job level."  (*Id.* at II.D.)  For example, the Policy provides that managers receive a minimum of two and a maximum of five months of conditional severance, plus a 30-day notification period.  Thus, a manager with two years of service before separation would be eligible for five months of total severance (one month notice period, plus four months of conditional severance).

Manager, Director, Vice President, Senior Vice President, and Executive Vice President,"
provided that (a) those individuals are not terminated for cause and (b) they do execute a binding
release agreement prepared by the employer.  (*Id.* at I, II.D.)  Additionally, "a reasonable person
could ascertain the company's general assets were the source of funding.  Finally, a reasonable
person could ascertain the procedure for receiving benefits was to contact the company's Human
Resources Department, and that is in fact the procedure [Evans] utilized."  *Petersen v. E.F.*
*Johnson Co.*, 366 F.3d 676, 679 (8th Cir. 2004).  Under these circumstances, plaintiff could not
reasonably object (and indeed, she has not objected) that defendant's leadership severance policy
does not qualify as an ERISA plan.  Accordingly, the Court finds that the Policy is a "plan, fund
or program" for ERISA purposes.  The first element of the *Butero* test is satisfied.[17]

### C.    *Plaintiff's Claims Are Not Claims for Benefits Under the Plan.*

#### 1.    *The Fourth* Butero *Element is Not Satisfied.*

The determination that Infirmary Health's leadership severance policy is an ERISA plan
is not dispositive of the jurisdictional question.  Indeed, "the presence of an ERISA plan within
the facts of a case does not, on its own, automatically subject the litigant to federal question
jurisdiction."  *Ervast*, 346 F.3d at 1014.  For superpreemption to attach, there must not only be

---

[17]    The same conclusion would be reached even if the Court were to afford primacy
to the "ongoing administrative scheme" requirement championed by Evans.  *See generally Fort*
*Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("Congress
intended pre-emption to afford employers the advantages of a uniform set of administrative
procedures governed by a single set of regulations.  This concern only arises, however, with
respect to benefits whose provision by nature requires an ***ongoing administrative program*** to
meet the employer's obligation.") (emphasis added).  The Policy contemplates an "ongoing
administrative scheme" for ERISA purposes because the benefits were not one-time, lump-sum
payments, but instead involved payments and continuation of benefits over time.  Moreover, the
Policy is not triggered by a single unique event (such as a plant closing), but instead would be
utilized on a rolling, ongoing basis depending on the timing of particular participants'
termination or reassignment.  Further, the Policy is designed to require case-by-case review of
employees to determine eligibility for benefits, inasmuch as beneficiaries are disqualified if
termination is for cause or if they fail to sign an appropriate release document.  For all of these
reasons, the Court is of the opinion that the Policy sufficiently contemplates an ongoing
administrative scheme to place it within the purview of ERISA.  *See, e.g., Petersen*, 366 F.3d at
679 (reciting factors to consider when deciding whether a plan is part of an ongoing
administrative scheme for ERISA preemption purposes).

an ERISA plan, but also the fourth element of the *Butero* test must be satisfied, to-wit: "the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan." *Butero*, 174 F.3d at 1212; *see also Jones*, 457 F.3d at 1178 (similar). Section 1132 permits a civil action by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plaintiff must be seeking one of these categories of relief in order for a state-law claim to be completely preempted by ERISA. *See Ervast*, 346 F.3d at 1014 (for a state-law claim to be completely preempted by ERISA, that claim must be "actually (1) a claim for recovery of benefits due under the terms of the plan, (2) a claim seeking to enforce his rights under the terms of the plan, or (3) a claim for clarification of future benefits under the terms of the plan"). In other words, federal question jurisdiction does not attach here unless Evans seeks to recover benefits due under the terms of the Policy, to enforce rights under the terms of the Policy, or to clarify future benefits under the terms of the Policy.[18]

   Evans' claims satisfy none of these requirements. The Complaint makes no mention of the Policy and does not purport to be stating claims for benefits under the Policy. To the contrary, the Complaint includes detailed discussion of the terms of the Agreement, and expressly hinges all of Evans' requested relief on that Agreement, not the Policy. For example,

_____

   [18]    The Court recognizes, of course, that Evans has not raised the fourth *Butero* element as a ground for remanding this action to state court, but has instead focused his jurisdictional attack exclusively on the question of whether there is an ERISA plan at all. Ordinarily, federal courts are loath to articulate litigants' legal arguments for them. Where subject matter jurisdiction is in doubt, however, courts bear an affirmative obligation to investigate *sua sponte*, which necessarily contemplates going beyond the four corners of a movant's briefs in support of remand to evaluate any defects in jurisdiction before moving forward. *See, e.g., Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) ("Federal courts are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.") (citation and internal quotation marks omitted); *Smith*, 236 F.3d at 1299 (explaining that a federal court "must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."). For that reason, the Court independently examines the "akin to that available under § 1132(a)" prong of the complete preemption test adopted by *Butero* and its progeny, notwithstanding Evans' failure to raise it.

Evans' declaratory judgment cause of action includes a request for a declaration "that Defendant is required to provided [*sic*] the Plaintiff with medical coverage and to pay all expenses associated therewith for her ongoing medical treatment pursuant to the terms of the 'Severance Agreement and General Release.'" (Complaint, at 3.)  Likewise, Evans' breach of contract claim specifically alleges that Infirmary Health "has breached the terms of the 'Severance Agreement and General Release' by refusing to provide Plaintiff with coverage for her ongoing medical conditions, all of which occurred or arose within the contract term."  (*Id.*, ¶ 11.)

The point is this: Evans has not asked for an award of benefits under the terms of Infirmary Health's leadership severance policy.  Nor has she asked this Court to enforce her rights, or to clarify her future benefits, under the terms of that Policy.  Instead, her claims are directly, solely and exclusively pegged to the written severance agreement that she and defendant executed.  She wants to enforce her rights under that Agreement, not the leadership severance policy that Infirmary Health ultimately identified as the ERISA plan on which it stakes its jurisdictional position.[19]  The relief Evans seeks, and the basis upon which that relief is sought, is not akin to that available under § 1132(a), because her allegations do not in any way involve clarification or enforcement of her rights ***under the terms of*** the Policy.  Defendant has not asserted otherwise, and indeed concedes that the Complaint is based on the Agreement. (Doc. 36, at 8-10.)  Therefore, Evans' claims are not completely preempted, and federal jurisdiction is lacking because the fourth element of the *Butero* test is not present.  *See Ervast*, 346 F.3d at 1014 ("State law claims are completely preempted by ERISA, and thus removable to federal court as federal claims pursuant to the *Butero* analysis, if they state a claim seeking the relief 'akin to' that provided for in § 1132(a).").

---

[19]    Again, the question of whether the severance agreement is or is not an ERISA plan is not properly before the Court, because Infirmary Health has identified the leadership severance policy as the ERISA plan in this case.  Confronted by plaintiff's attacks on its earlier suggestion that the severance agreement was an ERISA plan, defendant abandoned its contention that the Agreement is an ERISA plan, and instead stated as follows: "It has been the Defendant's position throughout this litigation that the severance agreement in question was entered into pursuant to a severance plan governed by ERISA .... [T]he agreement upon which Plaintiff's action is based 'relates to' an employee welfare benefit plan."  (Doc. 36, at 8-9.)  The Court will not look behind defendant's unambiguous stance to see if some other jurisdictional basis might exist.

2.      *The "Relate To" Argument Cannot Create Complete Preemption.*

In attempting to preserve a federal forum, Infirmary Health anticipated the need to connect Evans' claims under the Agreement back to the Policy (*i.e.*, the ERISA plan) in some way.  As noted *supra*, defendant does not maintain that plaintiff's claims actually seek enforcement or recovery of benefits under the terms of the Policy, or other § 1132(a) relief. Instead, defendant would link plaintiff's claims to the ERISA plan (*i.e.*, the Policy) using a "relate to" argument.  With neither explanation nor citations to authority, defendant offers bald assertions that "[b]ecause the agreement upon which Plaintiff is based 'relates to' an employee welfare benefit plan, her claims on that agreement are subject to super-preemption thus conferring jurisdiction on this court."  (Doc. 36, at 8-9.)  Defendant reiterates this argument in nearly identical terms later in its brief, asserting that "the severance agreement at issue relates to a severance plan governed by ERISA.  Plaintiff's claims for breach of that agreement and interpretation of that agreement seek relief for conduct to which ERISA applies and are super-preempted."  (*Id.* at 10.)  This "relates to" formulation is rooted in the text of § 514 of ERISA, which provides that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter ***relate to*** any employee benefit plan."  29 U.S.C. § 1144(a) (emphasis added).  Thus, any "relates to" basis for preemption is a creature of § 1144(a).

Defendant's approach suffers from a fundamental defect.  In particular, Infirmary Health overlooks the fact that whether a claim "relates to" an ERISA plan is part of the defensive preemption analysis, not the complete preemption analysis.  Although they are often confused by courts and litigants alike, complete preemption and defensive preemption are distinct questions, dependent on different tests and bearing different implications for a lawsuit.  "Whether complete preemption applies is a jurisdictional issue, which must be addressed first and is separate and distinct from whether a defendant's ERISA § 514, 29 U.S.C. § 1144, preemption defenses apply."  *Ervast*, 346 F.3d at 1012.  "Unlike complete preemption, which is jurisdictional, defensive preemption is a substantive defense, justifying dismissal of preempted state law claims."  *Jones*, 457 F.3d at 1179.  Whether a claim "relates to" an ERISA plan is not a part of the mandatory four-part complete preemption test articulated in the *Butero* line of cases.  *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1288 (11th Cir. 2005) ("a state-law claim is completely preempted only where all four 'elements' of complete preemption are

-17-

present"). It is, however, the central question in a defensive preemption analysis. *See Jones*, 457 F.3d at 1179 ("A state law claim is defensively preempted under ERISA if it ***relates to*** an ERISA plan.") (emphasis in original). A corollary of the distinction between these lines of inquiry is that a state-law claim may be defensively preempted, as relating to an ERISA plan, even if it is not completely preempted, in that it does not claim benefits due under an ERISA plan.[20] Defendant's argument conflates these distinct analyses, attempting to use a "relate to" analysis to effectuate complete preemption. Such an approach is impermissible, inasmuch as "a court cannot hold that state-law claims are completely preempted simply because they 'relate to' an ERISA plan." *Cotton*, 402 F.3d at 1289 (citing with approval earlier cases in which "we analyzed the complete preemption issue without reference to § 514's 'relate to' standard"). Accordingly, whether plaintiff's claims "relate to" the Policy is distinct from the question of whether plaintiff's claims are completely preempted. *See id.* at 1282 n.14 (explaining that "it is not *necessary* for a court addressing complete preemption to decide whether a claim is defensively preempted *in order to* decide the complete preemption issue") (emphasis in original).

Even if a "relate to" analysis were appropriate in the context of Evans' jurisdictional challenge, the Court would reach the same conclusion. Based on the record and argument presented, the Court has substantial reservations about whether Evans' claims for relief under the Agreement "relate to" the Policy within the meaning of § 1144(a). At least two appellate courts in facially analogous circumstances have found that a plaintiff's claims under a severance agreement did not relate to a severance plan for ERISA preemption purposes. In *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253 (4th Cir. 2005), the plaintiff brought a state-law

---

[20]     The Eleventh Circuit explained this possibility in the following terms:

"Complete preemption is thus narrower than 'defensive' ERISA preemption, which broadly 'supersede[s] any and all State laws insofar as they ... *relate to* any [ERISA] plan.' ERISA § 514(a), 29 U.S.C. § 1144(a) (emphasis added). Therefore, a state-law claim may be defensively preempted under § 514(a) but not completely preempted under [29 U.S.C. § 1132(a)]. In such a case, the defendant may assert preemption as a defense, but preemption will not provide a basis for removal to federal court."

*Cotton*, 402 F.3d at 1281.

breach of contract claim asserting that he was wrongfully denied severance benefits promised in his employment letter.  The employer, which had a severance plan governed by ERISA, argued that the plaintiff's breach of contract claim related to that severance plan and was therefore preempted.  The Fourth Circuit disagreed, holding that the breach of contract claim predicated on the severance provision of the letter agreement was not preempted, notwithstanding the ERISA-covered severance plan, where (1) "substantial differences between the severance provision of Gresham's employment agreement and the terms of the Severance Plan ... make clear that Kemper's promise to pay Gresham severance operated independently of the Severance Plan" and (2) "there is no indication in the record that severance pay awarded to Gresham pursuant to his employment agreement would be paid out of funds allocated to the Severance Plan."  *Gresham*, 404 F.3d at 259.

Likewise, in *Crews v. General American Life Ins. Co.*, 274 F.3d 502 (8th Cir. 2001), a company with an established severance plan offered employees certain additional severance benefits, which the company then failed to pay.  When an employee sued on a state-law breach of contract theory, the district court concluded that the contract claim was preempted by ERISA, reasoning that "the promised benefits were derived from an employee benefit plan because they were those contained in General American's established severance pay plan."  *Crews*, 274 F.3d at 505 (internal quotation marks omitted).  The Eighth Circuit reversed, explaining that "the significant differences between the company's existing plan and the promised benefits, as well as the lack of any evidence linking them to each other, lead us to conclude that the promised benefits were free-standing and were not premised in any way on the existing plan."  *Id.*[21]

This case is similar to *Gresham* and *Crews*.  The six months of severance benefits

---

[21]     *See also Wigell v. Nappi*, 485 F. Supp.2d 142, 145-46 (N.D.N.Y. 2007) ("Where significant differences exist between a company's existing severance plan and the promised benefits, it is appropriate to find that the promised benefits were free-standing and were not premised in any way on the existing plan. ... A company's failure to explain that a promised severance benefit is related to an existing severance plan may be proof that the two plans are different.").  In *Wigell*, the court found that the severance package offered to the plaintiff was separate and distinct from the ERISA-governed severance plan because (a) the conditions for severance eligibility were materially different; and (b) the severance agreement did not refer to or otherwise incorporate the existing benefit plan.  On that basis, the *Wigell* court found no ERISA preemption of the plaintiff's breach of contract and fraud claims.  *Id.* at 146-47.

promised Evans in her Agreement were substantially different from the mere four months of benefits which she apparently would have received under the Policy.  The Agreement was silent about the 30-day notification period identified in the Policy.  The Policy on its face applies to employees "at the functional level of Manager, Director, Vice President, Senior Vice President, and Executive Vice President," but Evans' job title was Assistant Vice President of Nursing, so it is not clear that she was even subject to the Policy.  Moreover, the Agreement makes no reference to the Policy, and certainly does not purport to be summarizing, incorporating or embodying the Policy in any way.  There is no evidence that Infirmary Health paid Evans under the Agreement using the same source of funds that would have been used to pay her under the Policy.  Evans' testimony was clear that she had never even heard of the Policy at the time of her discharge.  And there is no evidence that defendant notified Evans that her severance benefits in the Agreement were connected to, derived from, or in conformity with the Policy.  In fact, when defendant denied Evans' request for disability benefits, the denial letter relied exclusively on "terms and conditions of your Severance Agreement" (doc. 35, Exh. 3), with no mention of the Policy.  Based on all of these considerations, there are serious doubts as to whether Evans' claims under the Agreement in fact "relate to" the Policy at all, or whether they are free-standing and independent of the Policy, just like the claims at issue in *Gresham* and *Crews*.[22]

---

[22]     To be sure, the Court's research on this question reveals several cases where claims of breach of contract based on a severance or retirement agreement were found to relate to an ERISA-qualifying severance or pension plan.  However, those cases appear distinguishable.  *See, e.g., Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir.1992) (complaint explicitly referenced pension plan, and calculation of benefits would require reference to plan); *Kirkland v. SSL Americas, Inc.*, 263 F. Supp.2d 1326, 1347-48 (M.D. Ala. 2003) (plaintiff's claims for breach of individual-specific agreement related to company's severance plan where agreement specified conditions under which plaintiff would be entitled to benefits under that severance policy, such that contract could only be interpreted by referencing ERISA severance plan); *Paneccasio v. Unisource Worldwide, Inc.*, 2003 WL 1714085, *7-8 (D. Conn. Mar. 28, 2003) (plaintiff's state-law claims ostensibly based only on breach of early retirement agreement, not deferred compensation plan, held preempted by ERISA where those claims made explicit reference to the plan, concerned receipt of benefits under the plan, and required reference to plan to calculate promised benefits); *Bedger v. Allied Signal, Inc.*, 1998 WL 54411, *4 (E.D. Pa. Jan. 23, 1998) (claim for breach of severance agreement held to relate to pension plan for preemption purposes, where "[t]his claim only exists because it incorporates the terms of the ERISA plan").  Finally, defendant's reliance on *Cantrell v. Currey*, 407 F. Supp.2d 1280

Notwithstanding the foregoing, the issue of whether plaintiff's claims "relate to" the Policy governed by ERISA, and are therefore defensively preempted, is ultimately for the state court to make on remand.  This Court's holding that plaintiff's claims are not completely preempted by ERISA resolves the jurisdictional question, but is not and cannot be dispositive of Infirmary Health's affirmative defense of defensive preemption.  In the absence of jurisdiction, the undersigned makes no definitive judgments concerning the viability of that affirmative defense here.  *See Cotton*, 402 F.3d at 1292 ("if a district court remands to state court claims that are not completely preempted, the defendant may still attempt to raise [defensive] preemption as a defense in the state court"); *Ervast*, 346 F.3d at 1013 n.7 ("if a state law claim is not completely preempted because it seeks relief available under § 1132(a), then it is inappropriate to decide the substantive issue of defensive preemption without proper jurisdiction").

**III.   Conclusion.**

There can be no serious disagreement that Infirmary Health's leadership severance policy is an ERISA plan.  But Evans is not seeking relief under the terms of that ERISA plan at all, but is instead proceeding solely on the basis of a separate, free-standing severance agreement.  Under these circumstances, there is no ERISA superpreemption because Evans' complaint is not actually "(1) a claim for recovery of benefits due under the terms of the plan, (2) a claim seeking to enforce [her] rights under the terms of the plan, or (3) a claim for clarification of future benefits under the terms of the plan."  *Ervast*, 346 F.3d at 1014.  Defendant's "relate to" argument is ineffectual to overcome this jurisdictional failing because the mere fact that a plaintiff's claims relate to an ERISA plan establishes defensive preemption, not complete preemption.  Additionally, given the substantial differences between the Agreement and the Policy, as well as defendant's failure to tie the Agreement to the Policy at the time of execution or enforcement, it appears doubtful that plaintiff's claims under that Agreement relate to the

---

(M.D. Ala. 2005), appears to be misplaced.  In *Cantrell*, the plaintiffs' theory was that the company had orally promised to make the severance plan benefits available to them, then failed to do so.  Unlike this case, then, *Cantrell* did not involve a claim for breach of an independent, separate and free-standing agreement to pay them benefits that differed substantially from those contained in the ERISA plan, but instead involved merely a promise to make the ERISA severance plan's benefits available to the plaintiffs.  *See id.* at 1291.

Policy for preemption purposes.

For all of the foregoing reasons, the Court agrees with Evans that complete preemption does not attach.  There being no other basis for original federal subject matter jurisdiction over these state-law claims between nondiverse parties, remand is mandatory.  Accordingly, Evans' motion to remand, construed from her response to the motion for summary judgment (doc. 35), is **granted**, and this action is **remanded** to the Circuit Court of Mobile County, Alabama, for further proceedings.  Defendant's Motion for Summary Judgment (doc. 28) remains pending, given this Court's lack of jurisdiction to decide it, and will be left for the state court to address on remand.

DONE and ORDERED this 11th day of June, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE